UNITED STATES DISTRICT COURT
Eastern District of New York
-------------------------------------------------------------------X
SHUO WANG,

                                        Petitioner,          Case No.

v.

Kenneth Genalo, in his official capacity as Director
of U.S. Immigration and Customs Enforcement and
Removal Operations New York City Field Office;
Kristi NOEM, in her official capacity as Secretary of
Homeland Security; and Pamela BONDI, in her official
capacity as Attorney General of the United States.

                                   Respondents.

-------------------------------------------------------------------X

|  | |
|---|---|
| Petitioner, | Case No. |
| | **EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS ON BEHALF OF PETITIONER PURSUANT TO 28 U.S.C. § 2241** |
| | **ORAL ARGUMENT REQUESTED** |

## <u>INTRODUCTION</u>

Shuo Wang is a 26-year-old citizen of the People's Republic of China from Yingshan County, Hubei Province, who was detained and released on his own recognizance into the United States on or about August 28, 2023. Shuo did not finish his high school in China due to his poor family conditions in a rural area and his parents' poor health conditions, especially his father's chronic kidney diseases. After studying at Henan Medical Technician College for one year in 2017, he worked at a restaurant for one year in 2018. From 2019, he worked at Mingliang Glasses Store in Yulong Town, Xingyang City, Henan Province, until coming to the United States (except during COVID lockdowns).

On November 26, 2025, Shuo was forcibly arrested by the Department of Homeland Security (DHS) during a routine check-in at 26 Federal Plaza in Manhattan as part of a broader campaign by Respondents to detain individuals who have been in the United States for less than two years at the time they report to ICE. Notwithstanding the fact that Shuo had timely filed an

application for asylum and an Immigration Judge had scheduled a subsequent hearing for Shuo, immediately after reporting to ICE, Shuo was encircled by DHS agents without explanation and detained. He was subsequently subjected to isolation in the Metropolitan Detention Center (MDC) Brooklyn, where conditions for ICE detainees are notoriously inhumane and barbaric, including chronic understaffing, frequent lockdowns, violence, medical neglect, extreme temperatures, and maggot-infested food, as decried by federal judges, elected officials, and advocates who have called for an end to ICE detention there amid lawsuits and protests alleging dangers that have led to multiple inmate deaths.

There have not been—nor have Respondents alleged any—changes in either Shuo's immigration case or his personal situation since Shuo was initially released from detention on his own recognizance upon his entry into the United States. Shuo has, and continues to, pursue his asylum claim through proceedings before an immigration judge pursuant to Section 240 of the Immigration and Nationality Act. Moreover, there have been no changed circumstances supporting a finding that Shuo is a flight risk or danger to the community that could justify his detention. On the contrary, Shuo has established strong ties and complied with his legal obligations. Since entering the United States, Shuo has worked hard to support himself and his family, including his mother in poor health conditions and his younger brother in college in China, employed as a cleaner at Newbody Spa in Brooklyn since obtaining employment authorization based on his timely filed asylum application; he has always been helpful and generous to others, especially seniors whom he assisted extensively, and many people miss him very much as a valuable asset to the community.

Before his detention, he had been contacting his mother about ten thousand miles away in China, who has been in poor health conditions since the passing away of his father and always

comforted her with his improved life opportunities in the United States; now her health conditions have aggravated seriously due to worrying about her son's situations from lack of communications with her son and the widespread media coverage of the death of a Chinese ICE detainee in Pennsylvania.

Moreover, other than his detention by Immigration and Customs Enforcement (ICE), Shuo has never been arrested or charged by any law enforcement entity in the United States or any other country. In China, however, Shuo was unlawfully detained during the COVID-19 lockdown in February 2020 when he attempted to leave his home to purchase life-saving anti-rejection medication for his father, who suffered from chronic kidney disease and uremia; police officers intercepted him at the village entrance, pinned him to the ground, and held him in detention at the village government office for several days despite his explanations. He was released on March 5, 2020, after his father's death on February 28, 2020, but was prevented from attending the funeral. In early 2023, when Shuo sought accountability and compensation for his father's death through the Yingshan County Public Security Bureau, he was again detained by three officers on February 12, 2023, on accusations of "disrupting social order," during which he was punched in the chest and abdomen causing severe injury. He was released the next day only after his mother paid a 5,000 RMB fine, and he was threatened with further arrest if he continued to petition for justice. These prior experiences in China underscore Shuo's well-founded fear of persecution and the absence of any criminal record or unlawful behavior on his part that would justify his current detention in the United States. Shuo's unlawful and continued detention pursuant to DHS's policy—without any individualized determination as to why detention is appropriate—has caused immense and ongoing harm to Shuo, his family, and his community. Shuo brings this petition to seek immediate release.

**JURISDICTION**

1. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.

2. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner was ordered removed under 8 U.S.C. § 1225(b)(1).

3. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

4. Venue is proper because at the time of filing the original petition, Petitioner was detained at Metropolitan Detention Center in Brooklyn, New York, which is within the jurisdiction of this District. See *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (citing *Ex Parte Endo*, 323 U.S. 283 (1944)).

5. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise to his claims occurred in this District.

**REQUIREMENTS OF 28 U.S.C. § 2243**

6. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

7.  Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift and imperative* remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).\

**PARTIES**

8.  Petitioner Shuo Wang is lawfully present in the United States as an applicant for asylum, withholding of removal, and protection under the Convention Against Torture. He was detained by ICE at 26 Federal Plaza, New York, New York 10278. He is in the custody, and under the direct control, of Respondents and their agents.

9.  Respondent Kenneth Genalo is named in his official capacity as Director of U.S. Immigration and Customs Enforcement and Removal Operations New York City Field Office. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. Respondent Genalo's address is New York City ICE Field Office, 26 Federal Plaza, 9th Floor, Suite 9-110, New York, New York 10278.

10.  Respondent Kristi Noem is named in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to detain and remove Petitioner; and as such is a custodian of Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-04855.

11. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review (EOIR), pursuant to 8 U.S.C. § 1103(g). She routinely transacts business in the Southern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, she is the custodian of Petitioner. Respondent Bondi's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

## STATEMENT OF FACTS

12. Petitioner is a 26-year-old citizen of the People's Republic of China. He timely sought asylum in the United States as a result of the harm he experienced due to his opposition to the Chinese Communist Party's COVID-19 policies and his efforts to seek justice for his father's death.

13. Shuo did not finish his high school in China due to his poor family conditions in a rural area and his parents' poor health conditions, especially his father's chronic kidney diseases. After studying at Henan Medical Technician College for one year in 2017, he worked at a restaurant for one year in 2018. From 2019, he worked at Mingliang Glasses Store in Yulong Town, Xingyang City, Henan Province, until coming to the United States (except during COVID lockdowns).

14. When Shuo arrived in the United States, he entered on August 28, 2023, near San Ysidro, California, without inspection by an immigration officer. He was apprehended by a Border Patrol Agent on August 28, 2023, at approximately 01:49 AM, and was released from

detention on his own recognizance. His case was docketed with the Elizabeth, New Jersey Immigration Court on or about that time.

15. After he settled in New York, Shuo filed a timely application for asylum with the Immigration Court, detailing his fear of removal to China based on his past detentions and persecution.

16. Following his release into the United States, Shuo moved to New York City. Since entering the United States, Shuo has worked hard to support himself and his family, including his mother in poor health conditions and his younger brother in college in China, employed as a cleaner at Newbody Spa in Brooklyn since obtaining employment authorization based on his timely filed asylum application.

17. Shuo has always been helpful and generous to others, especially seniors whom he assisted extensively, and many people miss him very much as a valuable asset to the community.

18. Shuo is a devoted and engaged son and brother to his family. Prior to his detention, Shuo had been contacting his mother ten thousand miles away in China, who has been in poor health conditions since the passing away of his father, and always comforted her with his improved life opportunities in the United States. Now her health conditions have aggravated seriously due to worrying about her son's situations from lack of communications with her son and the widespread media coverage of the death of a Chinese ICE detainee in Pennsylvania.

19. Shuo gains great satisfaction from helping others and hopes to incorporate charitable acts into his adult life. He resided at 234 5th Ave, Apt 1, Brooklyn, NY 11215, before his detention.

20. On November 26, 2025, Shuo was arrested by Immigration and Customs Enforcement officials during a routine check-in at 26 Federal Plaza in Manhattan as part of a

broader campaign by Respondents to detain individuals who have been in the United States for less than two years at the time they report to ICE.

21. During his check-in, Shuo explained to ICE officials that he had timely filed an application for asylum and an Immigration Judge had scheduled a subsequent hearing for him. Notwithstanding this, immediately after reporting, Shuo was encircled by DHS agents without explanation and detained.

22. When Shuo was detained, the ICE agents did not inform him why they were detaining him, nor did they present a warrant. Shuo did not resist arrest. Upon information and belief, aside from the November 26, 2025 apprehension by ICE, and initial detention at the border, Shuo has not had any contact with law enforcement since entering the United States, nor in his home country of China, other than his illegal detentions during the COVID-19 lockdown and for protesting the Chinese government.

23. In China, however, Shuo was unlawfully detained during the COVID-19 lockdown in February 2020 when he attempted to leave his home to purchase life-saving anti-rejection medication for his father, who suffered from chronic kidney disease and uremia; police officers intercepted him at the village entrance, pinned him to the ground, and held him in detention at the village government office for several days despite his explanations. He was released on March 5, 2020, after his father's death on February 28, 2020, but was prevented from attending the funeral. In early 2023, when Shuo sought accountability and compensation for his father's death through the Yingshan County Public Security Bureau, he was again detained by three officers on February 12, 2023, on accusations of "disrupting social order," during which he was punched in the chest and abdomen causing severe injury. He was released the next day only after his mother paid a 5,000 RMB fine, and he was threatened with further arrest if he continued to

petition for justice. These prior experiences in China underscore Shuo's well-founded fear of persecution and the absence of any criminal record or unlawful behavior on his part that would justify his current detention in the United States.

24. Shuo did not have his phone at the time of his check-in. As a result, he was unable to contact his family immediately after detention.

25. On November 27, 2025, Shuo's family learned that Shuo was detained by ICE. Shuo appeared on U.S. Immigration and Customs Enforcement's Online Detainee Locator System, as "in ICE Custody" at Brooklyn MDC.

26. After Shuo was detained, he was held in isolation at the Metropolitan Detention Center (MDC) Brooklyn, where conditions for ICE detainees are notoriously inhumane and barbaric, including chronic understaffing, frequent lockdowns, violence, medical neglect, extreme temperatures, and maggot-infested food, as decried by federal judges, elected officials, and advocates who have called for an end to ICE detention there amid lawsuits and protests alleging dangers that have led to multiple inmate deaths.

27. Shuo was subjected to isolation in Brooklyn MDC, lacking access to basic necessities including adequate food and medical care. During his detention in Brooklyn MDC, Shuo alerted the ICE agents that he needed regular communication with his family, but no action was taken to address his needs.

28. While he is detained at Brooklyn MDC in Brooklyn, New York, at some point after his detention, DHS may have filed a motion related to his case, but Shuo remains at Brooklyn MDC. His Immigration Court case is venued before the Elizabeth, New Jersey Immigration Court.

29.  On or about December 10, 2025, a hearing was held, but due to detention, further proceedings are pending.

30.  In detention, Shuo has suffered emotionally. Although Shuo is 26 years old, his conditions are isolated, most of whom are unrelated adults. Shuo has been separated from family, work, and support, causing him fear and anxiety. Shuo's health has also suffered in detention. He is unable to control what he eats while detained, and is not receiving enough food in general, which exacerbates his symptoms.

31.  Shuo's family—his mother and younger brother—are also suffering from his detention. His mother is overcome with grief and extreme panic due to her aggravated health conditions. His younger brother is struggling in college because of the loss of support. Shuo knows about these challenges stemming from his arrest, and it adds to his emotional distress. There have not been—nor have Respondents alleged any—changes in either Shuo's immigration case or his personal situation since Shuo was initially released from detention on his own recognizance upon his entry into the United States. Shuo has, and continues to, pursue his asylum claim through proceedings before an immigration judge pursuant to Section 240 of the Immigration and Nationality Act. Moreover, there have been no changed circumstances supporting a finding that Shuo is a flight risk or danger to the community that could justify his detention. On the contrary, Shuo has established strong ties and complied with his legal obligations. Shuo's unlawful and continued detention pursuant to DHS's policy—without any individualized determination as to why detention is appropriate—has caused immense and ongoing harm to Shuo, his family, and his community. Shuo brings this petition to seek immediate release.

## LEGAL FRAMEWORK

32.  Since mid-May 2025, DHS has been employing a new campaign by which counsel for DHS moves to dismiss the cases of noncitizens who have been in the United States for under two years in Immigration Court to instead immediately pursue expedited removal.

33.  ICE officers waiting in lobbies, hallways, and elevator wells in Immigration Court buildings arrest individuals leaving their hearings. Initially, this was only upon dismissal to invoke expedited removal, but now apparently is targeting everyone, regardless of how the motion to dismiss is adjudicated. See Exh. 7 to Li Decl. (articles describing courthouse arrest campaign). As arrests inside courthouses picked up, so did arrests at immigrants' ICE check-ins. Many of these arrests happen behind closed doors inside 26 Federal Plaza — outside of the view of news cameras and reporters. See Exh. 7 to Li Decl. (articles describing arrests at immigrants' ICE check-ins).

34.  The ongoing civil arrests in or near Immigration Courts by Respondents stem from a significant change in policy and practice. On April 27, 2021, Respondents issued a memorandum titled "Civil Immigration Enforcement Actions in or near Courthouses" (April 2021 Memo). See Exh. 1 to Li Decl. That memo strictly limited civil immigration enforcement in or near courthouses to four specific circumstances: (1) national security threats; (2) imminent risk of death, violence, or physical harm; (3) hot pursuit of public safety threats; or (4) imminent risk of evidence destruction in criminal cases. Moreover, absent hot pursuit, ICE could only make civil arrests of public safety threats where no safe alternative location existed or with senior-level pre-approval. *Id*. at 2. The memo explicitly covered Immigration Courts, and one of the core rationales underlying this policy was that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and as a result, impair the fair administration of justice." *Id*. at 1.

35. This framework underwent a fundamental transformation on January 20, 2025, when Respondents rescinded the April 2021 Memo and issued new interim guidance. See Exh. 2 to Li Decl. The guidance was finalized on May 27, 2025. See Exh. 3 to Li Decl. (May 2025 Memo). In or around May 21, Respondents built upon this memo by initiating a policy of indiscriminate detentions at Immigration Courts around the country. See Exh. 7 to Li Decl. (articles describing courthouse arrest campaign). The policy proceeds in two parts: first, Respondents move to dismiss removal proceedings for the purpose of placing the non-citizen into expedited removal proceedings. Then, irrespective of the outcome of that motion, Respondents detain individuals as they leave court. No individualized custody review—considering, inter alia, the disposition of the motion to dismiss; pending applications for relief; or other equitable factors such as age, health, or caretaking responsibilities—occurs.

36. As a result of his arrest pursuant to this DHS policy, Shuo remains detained in the Metropolitan Detention Center (MDC) Brooklyn and further proceedings are pending before the the Elizabeth, New Jersey Immigration Court.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE DUE PROCESS CLAUSE
### OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### SUBSTANTIVE DUE PROCESS

37. The allegations in the above paragraphs are re-alleged and incorporated herein.

38. Shuo is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

39. The government's ongoing detention of Shuo is unjustified and unlawful.

40.  While civil immigration detention is authorized by statute, that authorization does not free immigration detention from the constricts of the Constitution. See *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024). Courts have identified only two legitimate purposes for immigration detention: to "ensur[e] [the noncitizen's] appearance ... at future immigration proceedings," and to "[p]revent[] danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Neither goal is served by Shuo's detention.

41.  Upon his Release on Recognizance, Shuo was determined to be neither a flight risk nor a danger to the community. 8 C.F.R. § 1235.1(c)(8) (permitting release by DHS only "if [the noncitizen] demonstrates to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding").

42.  There have been no changed circumstances supporting any finding that Shuo is a flight risk or a danger to the community. In fact, the contrary is true.

43.  Shuo was detained by ICE at his ICE check-in, demonstrating that there was no need for him to be detained to ensure his presence at those proceedings. His very presence at his ICE check-ins close to the Immigration Court at the time of his detention demonstrated that he was willing and able to attend his immigration proceedings.

44.  Moreover, Shuo is not a danger to the community, nor have Respondents asserted otherwise. Aside from his detentions by ICE, Shuo has never been arrested, charged, or convicted of any crime in the United States.

45.  Shuo has no adequate remedy at law, as he seeks immediate release and has been found by an immigration judge to be ineligible for bond pursuant to *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

46. For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

## COUNT TWO
### VIOLATION OF THE DUE PROCESS CLAUSE
### OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### PROCEDURAL DUE PROCESS

47. The allegations in the above paragraphs are realleged and incorporated herein.

48. Shuo is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

49. The Procedural Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of a protected interest without notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

50. Respondents provided Shuo with no notice or opportunity to be heard prior to arresting and detaining him.

51. Respondents have offered Shuo no meaningful opportunity to be heard or challenge his detention since detaining him.

52. Shuo's detention thereby deprives him of his rights to Due Process under the Fifth Amendment of the United States Constitution.

53. Shuo has no adequate remedy at law, as he seeks immediate release and has been found by an immigration judge to be ineligible for bond pursuant to *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

## COUNT THREE
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

54. The allegations in the above paragraphs are realleged and incorporated herein.

55. The Administrative Procedure Act prohibits agency action that is arbitrary and capricious. 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

56. Shuo's detention—where there was no change of circumstances supporting his detention—is arbitrary and capricious. Respondents had no reason to believe Shuo had become a flight risk or danger to the community, and thus his detention was and is arbitrary and capricious.

57. Respondents' courthouse arrest policy and the subsequent ICE check-in arrest policy, whereby they indiscriminately detain individuals present in the U.S. for under two years irrespective of the individual circumstances in their case, is arbitrary and capricious in violation of the Administrative Procedure Act as applied to Shuo. Shuo's arrest pursuant to this policy involved no individualized determination that justifies his detention.

58. Shuo has no other adequate remedy at law. Even if he is released, so long as Respondents maintain this ongoing courthouse and ICE check-in detention campaign, he may be subjected to it at any of his future hearings.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court grant the following:

1) Assume and maintain jurisdiction over this matter no matter where Respondents may relocate the Petitioner;

2)  Order Respondents to show cause why the writ should not be granted within three days and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

3) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

4) Declare that Respondents' actions violate the Administrative Procedure Act;

5) Issue a Writ of Habeas Corpus ordering Respondents to release Shuo Wang immediately;

6) Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

7) Grant any further relief this Court deems just and proper.

costs, and sanctions pursuant to 22 NYCRR § 130-1.1 for Plaintiff's frivolous and bad-faith application; and granting such other and further relief as this Court deems just and proper.

Respectfully Submitted,

VIP LAW GROUP, PC
By: __/s/ *Guofeng Li*___
Guofeng Li, Esq.
855 Conklin Street. Suite S
Farmingdale, NY 11735
Tel: (516) 808-6266
Email: lawyerly.chris@gmail.com
*Attorneys for Petitioner*

Date: December 22, 2025

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Shuo Wang, and submit this verification on his behalf. I hereby verify that

the factual statements made in the foregoing Emergency Petition for Writ of Habeas Corpus are

true and correct to the best of my knowledge.

Dated: December 22, 2025

By: /s/ *Guofeng Li*
Guofeng Li, Esq.
855 Conklin Street. Suite S
Farmingdale, NY 11735
Tel: (516) 808-6266
Email: lawyerly.chris@gmail.com
*Attorneys for Petitioner*